IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00449-MSK-NYW

STEPHANIE SULLO,

       Plaintiff,

v.

VAIL SUMMIT RESORTS, INC.

       Defendant.

---

RECOMMENDATION REGARDING DEFENDANT'S PARTIAL MOTION TO DISMISS

---

Magistrate Judge Wang

       This matter comes before the court on Defendant Vail Summit Resorts, Inc.'s ("Vail" or "Defendant") Partial Motion to Dismiss [#14], filed on June 9, 2014 seeking to dismiss the First and Second Claims asserted in the lawsuit filed by Plaintiff Stephanie Sullo ("Plaintiff" or "Ms. Sullo") on February 20, 2014. This Motion was referred to this Magistrate Judge pursuant to the Order of Reference dated March 13, 2014 [#5] and memorandum dated July 8, 2014 [#19]. After carefully considering the Motion and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that Defendant's Motion to Dismiss be GRANTED in part and DENIED in part.

**BACKGROUND AND PROCEDURAL HISTORY**

       Ms. Sullo filed this lawsuit asserting claims of negligence in training and supervision, negligence *per se*, and *respondeat superior* against Vail and seeking compensatory damages for

injuries incurred while disembarking from a chair lift at Breckenridge Ski Resort ("Breckenridge").[1] The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The following is a statement of Ms. Sullo's allegations as pled. On March 9, 2012, Plaintiff was skiing with her husband and their four children (collectively, the "Sullo family") when they boarded a six-person detachable grip aerial lift known as the "Quicksilver lift." [#6 at ¶¶ 4, 5]. This lift services a predominantly beginner and intermediate area of the resort. [*Id.* at ¶ 6]. A beginner skier sitting in the chair ahead of the Sullo family fell as he attempted to disembark the lift, thereby obstructing the path in advance of the Sullo family unloading. The Vail employee operating the Quicksilver lift failed to stop or slow the lift to allow the fallen skier to recover. [*Id.* at ¶ 8]. Plaintiff was seated in the middle of the chair with her children on either side. Accordingly, she was prevented from skiing around the accident when the chair deposited her directly in front of the skier. [*Id.* at ¶ 9]. Plaintiff attempted to stop herself rather than ski into the accident, and she fell backwards as a result. Her boots remained locked into her skis as she fell, and she consequently suffered severe injuries to her knees, including a complete tear of her right anterior cruciate ligament and sprain of both medial collateral ligaments. [*Id.* at ¶ 10].

Ms. Sullo filed her Complaint on February 20, 2014, naming Vail Resorts, Inc. [#1]. She amended the Complaint on March 14, 2014 to add Vail Summit Resorts, Inc. as the second Defendant. [#6]. On March 26, 2014, Plaintiff moved pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii) to dismiss Vail Resorts, Inc. from the lawsuit. [#9]. Chief Judge Krieger granted the Motion to Dismiss Party on March 27, 2014. [#10].

Vail waived service on April 8, 2014. [#11]. On June 9, 2014, Vail simultaneously filed an Answer and the pending Motion to Dismiss Plaintiff's claims for *respondeat superior* and

---

[1] Plaintiff avers that Breckenridge is owned and operated by Vail. (#6 at ¶ 4).

negligent training and supervision. [#14 and #15]. Plaintiff filed a Response to the Motion on June 30, 2014 [#17], and Vail filed its Reply on July 17, 2014. [#22]. This action was reassigned to this Magistrate Judge on February 9, 2015. [#26].

## STANDARD OF REVIEW

Under 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to

relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Vail argues that Ms. Sullo fails to state a claim upon which relief could be granted as to her claims for *respondeat superior* and negligent training and supervision because, pursuant to the Colorado Ski Safety Act ("Ski Safety Act" or "Act"), C.R.S. § 33-44-101 to 114, it is immune from any claim for damages resulting from "the inherent dangers and risks of skiing," and Plaintiff's fall after disembarking from the chair lift qualifies as such.

The Ski Safety Act sets forth safety standards for the operation of ski areas and for the skiers using them, and defines the rights and liabilities existing between the skier and the ski area operator. *See* Colo. Rev. Stat. § 33-44-102. *See also Doering ex el Barrett v. Copper Mountain*, 259 F.3d 1202, 1212 (10th Cir. 2001).[2] "Notwithstanding any judicial decision or any other law or statute to the contrary, ... no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." Colo. Rev. Stat. § 33-44-112. The definition of "inherent dangers and risks of skiing" specifically excludes "the negligence of a ski operator as set forth in section 33-44-104(2)," which provides that "a ski operator's violation of any requirement under the Ski Safety Act that results in injury to any person constitutes negligence." Colo. Rev. Stat. §§ 33-44-104(2), -112. Accordingly, a ski operator may be liable under one of two theories: a skier may recover if her injury resulted from an occurrence not considered an inherent danger or risk of skiing; and a skier may recover if the ski operator violated a provision of the Act and that violation resulted in injury. *See Kumar v. Copper Mountain, Inc.*, 431 Fed. Appx. 737, 738 (10th Cir. 2011). A claim arising under the

---

[2] No one contests that Vail is a "ski area operator" as defined in the Act.

first instance would fall outside of the Act and be governed by common-law negligence principles. *Id.* (citing *Graven v. Vail Assocs.,* 909 P.2d 514, 520 (1995), partially abrogated on other grounds by Colo. Rev. Stat. § 33–44–112). Plaintiff asserts claims under both theories of liability, though only the first theory is at issue here.

**A.      Respondeat Superior**

The Ski Safety Act defines "inherent dangers and risks of skiing" to mean:

> those dangers or conditions that are part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, extreme terrain, and trees, or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities.

Colo. Rev. Stat. § 33-44-103(3.5). This subsection instructs that "[t]he term 'inherent dangers and risks of skiing' does not include the negligence of a ski area operator as set forth in section 33-44-104(2)," and nothing in section 33-44-103(3.5) should be construed to limit the liability of a ski area operator for injury caused by the use or operation of ski lifts. *Id.*

The Act requires that each skier:

> maintain control of his speed and course at all times when skiing and to maintain a proper lookout so as to be able to avoid other skies and objects. However, the primary duty shall be on the person skiing downhill to avoid collision with any person or objects below him.

*Id.* at § 33-44-109(2). A violation of this provision (or any requirement of the Act) that results in personal injury constitutes negligence on the part of the individual responsible for the violation. *Id.* at § 33-44-104(1).

Vail argues that sections 33-44-103(3.5) and 109(2) govern this Claim, and therefore, the Claim should be dismissed for failure to state a cognizable claim. Plaintiff responds that Colorado common law governs because her accident resulted from the negligence of the ski lift operator, which is expressly excluded from the list of "inherent dangers and risks of skiing." Vail does not dispute this statement of law, but asserts that Ms. Sullo's accident resulted instead from her efforts to avoid a collision with another skier and her failure to maintain control of her speed while skiing downhill, rather than by the use or operation of ski lifts.

In 1997, the Tenth Circuit certified to the Supreme Court of Colorado the question of whether the Ski Safety Act abrogates the state's common law standard of care owed by ski lift operators to skiers using the lift. *See Bayer v. Crested Butte Mountain Resort, Inc.*, 153 F.3d 726 (10th Cir. 1998). The Supreme Court answered in the negative, holding that "[a] ski lift operator must exercise the highest degree of care commensurate with the lift's practical operation," and that "the General Assembly did not intend by either [the Colorado Passenger Tramway Safety Act or the Ski Safety Act] to substitute a standard of care lesser than the highest degree." *Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 71-2 (Colo. 1998).[3] Accordingly, acts of negligence by ski lift operators are governed by Colorado common law.

Vail argues that *Bayer* does not apply here because Ms. Sullo had unloaded from the lift and was skiing downhill when she injured herself. Vail analogizes these circumstances to those of plaintiff in *Weiner v. Sunlight, Inc.*, 08-cv-01483-CBS-BNB, 2011 WL 4501963 (D. Colo. September 29, 2011), who was injured when an approaching center-pole chair struck him from behind as he waited to board the lift. In *Weiner,* the court, in the context of deciding post-trial

---

[3] The Colorado Passenger Tramway Safety Act is intended to "assist in safeguarding life, health, property, and the welfare of the state in the operation of passenger tramways." Colo. Rev. Stat. § 25-5-701.

motions, determined that the Act's statutory cap on damages applied to the jury's award of damages because the plaintiff was not a "passenger" or "riding" on a chair lift within the meaning of section 33-14-113. *See* Colo. Rev. Stat. § 33-14-113 (capping damages "attributable to noneconomic loss or injury," except for those "associated with an injury occurring to a passenger while riding on a passenger tramway."). In reaching this conclusion, the court considered that trial evidence had established plaintiff never assumed a seated position on the chair lift. *Weiner*, 2011 WL 4501963, at *3.

*Weiner* is distinguishable from this case by procedural posture and question presented. The issue decided by the court in *Weiner* was presented first post-trial, not through a dispositive motion. *See Weiner v. Sunlight, Inc.*, Case No. 08-cv-01483-CBS-BNB, (ECF No. 110-3; Special Verdict Form B dated 1/28/11, at p. 1).[4] Therefore, the court had the benefit of the trial testimony in ruling whereas I must take Ms. Sullo's well-pleaded facts as true. *Casanova v. Ulibarri*, 595 F.3d at 1124. Ms. Sullo expressly alleges that "[t]he Vail lift operator on duty at the top of the Quicksilver lift negligently either failed to observe the danger and slow or stop the lift or did in fact observe the danger and knowingly failed to slow or stop the lift, and therefore the Sullo Family was forced to disembark into the debris field." [#6, at ¶ 8]. At the motion to dismiss stage, the court takes Ms. Sullo's allegations as true, and accordingly, I find that Ms. Sullo has adequately pled that her injury was caused by the negligent operation of the ski lift.

In addition, the question presented in *Weiner* was not whether the defendant could avoid liability because Dr. Weiner was not injured by "the use or operation of the ski lift." Instead, Sunlight appeared to concede that Dr. Weiner was injured by the use or operation of the ski lift, but disputed that Dr. Weiner was "riding" on the chairlift at the time of injury because of the

---

[4] The court may take judicial notice of proceedings in other courts if those proceedings have a direct relation to the matters at issue. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979).

express language of the damages cap found in section 33-14-113.  Section 33-44-103(3.5), by contrast, asks whether the injury was caused by the "use or operation of ski lifts."  Nothing in the section requires Ms. Sullo to be "riding" on the chairlift when the injury occurred.

Moreover, Vail's Motion ignores the considerations used by the Colorado General Assembly in preserving distinctions between ski slope and ski lift accident liability.  Because passengers entrust their safety to the employees operating the ski lift, operation of the lift "entails both greater danger and greater responsibility than circumstances involving ordinary care." *Bayer*, 960 P.2d at 73.  Vail essentially argues that Ms. Sullo's attempt to avoid the fallen skier constitutes an intervening act, and that to find otherwise would open a floodgate of "creative pleading of claims for injury" occurred while skiing on downhill terrain accessed by a chairlift. [#22 at 2].  However, Ms. Sullo pled that Vail's employee negligently or knowingly breached his duty of care when he failed to slow or stop the Quicksilver lift after the novice skier fell, and that but for his actions she would not have been confronted with a collision or required to adjust her speed.  [#6 at ¶ 13].  In other words, she was at the mercy of the lift operator.  *See Bayer*, 960 P.2d at 72 (noting that its "holding in [*Summit County Development Corp. v. Bagnoli*, 441 P.2d 658 (Colo. 1968)] squarely placed on lift operators the duty to exercise the highest degree of care consistent with the practical operation of the ski lift because (1) passengers give up their freedom of action and movement, surrendering themselves to the care and custody of the ski lift operator, (2) there is usually nothing passengers can do to cause or prevent the accident, and (3) the operator has exclusive possession and control of the ski lift.").  The fact that Ms. Sullo incurred injuries immediately after her skis slid onto solid ground does not extinguish the need to consider the lift operator's role in creating the dangerous condition to which Plaintiff was forced to react.

Accordingly, Plaintiff has stated a claim for *respondeat superior* that is plausible on its face, and I must recommend denying Vail's Motion to Dismiss as to this Claim.

**B.     Negligent Training and Supervision**

To state a claim for negligent training and supervision Plaintiff must allege that Vail knew its employee posed a risk of harm to her and the harm that occurred "was a foreseeable manifestation of that risk." *Keller v. Koca*, 111 P.3d 445, 446 (Colo. 2005). Vail argues that Ms. Sullo failed to plead either element of this Claim, and that amendment would be futile because Plaintiff's fall was an inherent danger or risk of skiing and Vail is immune from resulting injuries. In her Response, Ms. Sullo urges the court to infer the knowledge and foreseeable manifestation elements from the allegations in her Amended Complaint, asserting that these requirements are merely "sub-elements" of duty and causation. [#17 at 7]. Plaintiff further asserts that she has provided sufficient factual content to justify such an inference, and asks that she be allowed to amend her Complaint if the court finds otherwise.

The Colorado Supreme Court has stated that in the context of negligent supervision, the controlling issues are *knowledge* and causation. *Keller*, 111 P.3d at 448 ("Liability of the employer is predicated on the employer's antecedent ability to recognize a potential employee's 'attribute[s] of character or prior conduct' which would create an undue risk of harm to those with whom the employee came in contact in executing his employment responsibilities.") (quoting *Moses v. Diocese of Colorado*, 863 P.2d 310, 327 (Colo. 1993)) (further citation omitted). The Restatement (Second) of Agency also instructs that "[l]iability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." Restatement (Second) of Agency § 213 cmt. d. Contrary to Plaintiff's position, a

9

negligent supervision claim is not subsumed by a negligence claim. Ms. Sullo failed to allege in her Amended Complaint that Vail knew the offending lift attendant had performed or would perform his duties negligently, and thus she did not properly plead a claim for negligent training and supervision. Furthermore, Plaintiff cannot motion the court for relief in the Response to another Motion. *See* D.C.COLO.LCivR 7.1(d).

Accordingly, I recommend granting Vail's Motion to Dismiss as to this Claim.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendant Vail's Motion to Dismiss [#14] be GRANTED IN PART, as to the Claim for negligent training and supervision and DENIED IN PART, as to the Claim for *respondeat superior*.[5]

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: February 23, 2015               BY THE COURT:

                                                                 s/Nina Y. Wang_____
                                                                 United States Magistrate Judge